# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MYLES KIRBY, Liquidator, o/b/o BLACKROCK MEDICAL PARTNERS LIMITED, a corporation of the Republic of Ireland, <br><br> Plaintiff, <br><br> v. <br><br> JOSEPH C. SHEEHAN a/k/a JOSEPH MARY SHEEHAN, JOSEPH SHEEHAN SR., and JOSEPH CM SHEEHAN d/b/a BMP GALWAY; NORAH E. SHEEHAN; JAMES J. SHEEHAN; FRANCES P. CROWLEY; MARK J. CROWLEY; IMMERSION SOLUTIONS LAB LLC; BMP GALWAY LLC; JASBLACK GLOBAL LIMITED; MEDISTEAD IRELAND LIMITED; and MILLER BRIDGE LIMITED, <br><br> Defendants. | Case No. 2023 CV 936 <br><br> **JURY DEMANDED**. |

## COMPLAINT

MYLES KIRBY, Liquidator, o/b/o BLACKROCK MEDICAL PARTNERS LIMITED, a corporation of the Republic of Ireland, by and through its attorneys Melinda L. Mannlein and Hasselberg, Rock, Bell & Kuppler, LLP, alleges as follows for its RICO Complaint pursuant to 18 U.S.C. § 1962:

### JURISDICTION

1. This Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States.

2. More specifically, this Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1964, which grants jurisdiction to the district courts of the United States to prevent and restrain violations of 18 U.S.C. § 1962.

**VENUE**

3. Venue is proper in this judicial district pursuant to 18 U.S.C. § 1965(a) and 28 U.S.C. § 1391(b)(2) because Defendants JOSEPH C. SHEEHAN a/k/a JOSEPH MARY SHEEHAN, JOSEPH SHEEHAN SR., and JOSEPH CM SHEEHAN d/b/a BMP GALWAY ("**Joseph**") and NORAH E. SHEEHAN ("**Norah**") reside and transact affairs in this district and a substantial part of the events giving rise to the claim occurred in this district.

4. Venue is also proper pursuant to 18 U.S.C. § 1965(b) because the ends of justice require personal jurisdiction of defendants in multiple jurisdictions, all of whom have minimum contacts with the United States.

5. Venue is further proper pursuant to 28 U.S.C. § 1391(c)(3) because a defendant not a resident in the United States may be sued in any judicial district.

**PARTIES**

6. Plaintiff BLACKROCK MEDICAL PARTNERS LIMITED ("**Plaintiff**") is a company organized and registered in the Republic of Ireland with its registered office located at Kirby Healy Chartered Accountants, 3 Fitzwilliam Court, Pembroke Street Upper, Dublin, Ireland. In Illinois Northern Bankruptcy Court, Case No. 18-31569, Norah represented Plaintiff's business address to be 28W531 Roosevelt Rd Winfield, IL 60190. *See* Case No. 18-31569, Dkt. 1

7. Plaintiff is currently subject to compulsory liquidation by the High Court of Ireland in High Court Record 2021 No. 15 COS, in which MYLES KIRBY of Kirby Healy Chartered Accountants (the "**Liquidator**") was appointed liquidator. Pursuant to Section 627, Table 1(a) of the Irish Companies Act 2014, the Liquidator has the power to bring this action in the name and on behalf of Plaintiff.

8. Plaintiff was originally incorporated in 2000 for the stated purpose of developing the Galway Clinic, a private hospital located in Galway, Ireland, that was founded

by Joseph. In practice, Plaintiff was an investment holding company whose sole function was to hold shares in Marpole Limited, an Irish-registered company that operates the Galway Clinic. Until 2020, Plaintiff was a 25% shareholder in the Galway Clinic.

9. Joseph is a resident of Winfield, Illinois. He is licensed to practice medicine in the State of Illinois, with registered office addresses in Warrenville, Illinois, and Chicago, Illinois. At all times relevant hereto, he was a registered director of Plaintiff.

10. Norah is Joseph's wife and a resident of Winfield, Illinois. At all times relevant hereto, she was a registered director of Plaintiff.

11. Defendant JAMES J. SHEEHAN ("**James**") is Joseph's son. On information and belief, he is a resident of Winfield, Illinois or Ireland.

12. Defendant FRANCES P. CROWLEY ("**Frances**") is Joseph's daughter and currently a resident of Franklin, Tennessee. At all times relevant hereto, she was a registered alternate director of Plaintiff and resided in Naperville, Illinois.

13. Defendant MARK J. CROWLEY ("**Mark**") is Joseph's son-in-law and currently a resident of Franklin, Tennessee. At all times relevant hereto, he resided in Naperville, Illinois.

14. Defendant IMMERSION SOLUTIONS LAB LLC ("**Immersion**") is a Delaware company with file number 5685087 and a registered agent in Lewes, Delaware. At all times relevant hereto, Frances and Mark, as joint owners, maintained a bank account for Immersion at First American Bank in Naperville, Illinois. Frances and Mark represented to the bank that Mark was the owner of Immersion and Frances was the secretary. They further represented that Immersion was an Illinois LLC with a business address of 10619 Royal Porthcawl Drive, Naperville, IL 60564.

15. Defendant BMP GALWAY LLC ("**BMP**") is a Delaware company with file number 5868611 and a registered agent in Wilmington, Delaware. On or about September 11,

2018, Norah filed for Chapter XI bankruptcy on behalf of BMP in Illinois Northern Bankruptcy Court Case No. 18-31568. She gave BMP's business address as 28W531 Roosevelt Road, Winfield, IL 60190, and stated that its domicile, principal place of business, or principal assets were in the Northern District for 180 days immediately preceding the date of the petition or for a longer part of such 180 days than in any other district. *See* Bankruptcy Court Case No. 18-31568, Dkt. 1 & 1-1. BMP is the sole shareholder of Plaintiff, and pursuant to the bankruptcy filings, Joseph is the sole shareholder of BMP. *Id*., Dkt. 9.

16. Defendant JASBLACK GLOBAL LIMITED ("**Jasblack**") is a company organized in the Republic of Ireland, with Registration Number 664521 and a registered office at Apartment 21 Rockabil South Strand Skerries, Dublin 2, Ireland. The company is of little or no substance and controlled by James, who is the sole director and sole shareholder.

17. Defendant MEDISTEAD IRELAND LIMITED ("**Medistead**") is a company organized in the Republic of Ireland with Registration Number 619120 and a registered office at Saint Joseph's, Upper Village, Ballyheigue Co. Kerry, V92V6P4, Ireland. The company is of little or no substance and controlled by James, who is the sole shareholder and sole director. Joseph is the company secretary.

18. Defendant MILLER BRIDGE LIMITED ("**Miller**") was a company organized in the Republic of Ireland, with Registration Number 552585 and a registered office at Saint Joseph's, Upper Village, Ballyheigue Co. Kerry, V92V6P4, Ireland. Starting on April 11, 2019, Joseph was the sole director and 50% shareholder of Miller, and Frances was the registered secretary.

## BACKGROUND IRISH PROCEEDINGS

19. In 2016, Plaintiff, under the control of Joseph and Norah, initiated litigation in the High Court of Ireland against Parma Investments Limited ("**Parma**") and others in High Court Record 2016 No. 7077 P (the "**Proceedings**").

20. In Ireland, the loser pays the winner their costs in any action as awarded by the Court on an interim basis, and after that, the Court assesses the costs in the absence of an agreement.

21. On or about December 12, 2019, the Court entered an order declining the relief sought by Plaintiff in the Proceedings, and accordingly, Parma sought payment of their costs of the Proceedings from Plaintiff.

22. On or about January 16, 2020, the Court ordered that Parma was to recover its costs from Plaintiff, with the amount of costs reserved for determination by the Court in absence of an agreement by the parties (the "**Initial Costs Order**").

23. Apprehensive that Plaintiff might remove its assets before the costs had been paid, Parma applied to the Court for injunctive relief to freeze Plaintiff's assets, known in Ireland as a "Mareva Injunction".

24. On or about February 6, 2020, the High Court entered an interim Mareva Injunction against the Plaintiff in the Proceedings.

25. On or about February 12, 2020, the High Court continued the Mareva Injunction, and ordered that Plaintiff make an initial payment of €803,006.86 to Parma and the other defendants within 14 days, pending further adjudication of the full amount of costs. Joseph was also ordered to submit an affidavit regarding the assets and liabilities of Plaintiff, the whereabouts of funds from the sale of Plaintiff's shares in Marpole Limited, and the alleged sale of shares in and change of directors of the Plaintiff.

26. On or about February 19, 2020, Joseph submitted an affidavit, claiming not to be a party to the Proceedings and providing no substantive information in response to the issues posed by the court.

27. On or about February 28, 2020, unsatisfied with Joseph's affidavit, the High Court ordered Joseph to submit a further affidavit addressing twenty-four (24) specific items and including any documentation related thereto.

28. On or about March 13, 2020, Joseph filed a second affidavit, again claiming not to be a party and not addressing the court's concerns or providing documentation of Plaintiff's assets and liabilities.

29. On or about December 10, 2020, Parma's attorneys sent a demand letter to Plaintiff that it make arrangements to pay the costs of the Proceedings or be subject to liquidation under the Irish Companies Act of 2014.

30. Plaintiff did not respond to the demand letter or pay any of the ordered costs of the Proceedings.

31. In Ireland, after following the proper procedures, an unpaid creditor can petition the court to force an insolvent company into compulsory liquidation – or to be "wound up" – pursuant to Part 11 of the Companies Act of 2014.

32. On January 27, 2021, Parma's attorneys filed a Petition to Wind Up the Plaintiff.

33. On March 1, 2021, Plaintiff was ordered to be wound up, and the Liquidator was appointed by the Court.

34. The Liquidator's job is to realize the assets of Plaintiff and to pay the creditors (including taxes to the Irish Department of Revenue) from the proceeds of any assets of Plaintiff. Where there are insufficient funds to pay all the creditors, the funds available are distributed to creditors in a particular order of preference.

35. The Liquidator is obliged, under Company Law (the Companies Act 2014, supplemented by principles of common law), to report to the Office of the Director of Corporate Enforcement on how the directors conducted the affairs of the Plaintiff.

36. Despite requests from the Liquidator and their obligations as directors, Joseph and Norah failed to file a Statement of Affairs and failed to deliver any company records to the Liquidator.

37. Due to Joseph's and Norah's refusal to cooperate, the Liquidator independently investigated the Plaintiff's affairs and the whereabouts of its assets.

38. The Liquidator learned that on January 17, 2020, the day after the Initial Costs Order was entered, Plaintiff received payment of €3,245,080.00 for the sale of its shares in Marpole Limited.

39. Between January 20, 2020, and February 6, 2020 – the day the Mareva Injunction was entered – the entire sum of €3,245,080.00 was dissipated or attempted to be dissipated through various wire transfers, with all wire instructions executed and directed by Joseph.

40. Specifically, Joseph wired at least €2,542,900.00 of said sum (the "**Funds**") from the Plaintiff's bank account in Ireland to the individual and/or company Defendants named herein.

41. Joseph initially removed the Funds through the following scheme of wire transfers (the "**Impugned Transactions**"):

 (a) On or about January 20, 2020, Joseph wired €900,000 to Medistead as "Escrow for James Sheehan and Jasbla[ck] Global Limited/Escrow for James Sheehan";

 (b) On or about January 20, 2020, Joseph wired €1,100,000 to Immersion for "BMP Galway LLC Escrow Agent Account" at First American Bank in Illinois;

 (c) On or about January 20, 2020, Joseph wired €400,000 to Miller in Ireland for "directors' fees of [Plaintiff] from 2011 to 2019";

 (d) On or about January 29, 2020, Joseph wired €60,000 to Kevin Sheehan ("**Kevin**") at JP Morgan Chase in Michigan. Kevin is Joseph's son; and

(e) On or about February 6, 2020, Joseph wired €142,900 to JP Morgan Chase London for further credit to "Joseph CM Sheehan d/b/a BMP Galway".

42. On or about February 2, 2020, the €60,000 wired to Kevin was returned to Plaintiff's account, minus €62.50 in wire fees. On information and belief, this was due to Joseph inputting the wrong account number for Kevin.

43. Upon investigating the companies receiving funds from the Impugned Transactions, the Liquidator discovered that Jasblack had first been registered as a company on January 17, 2020, a mere three (3) days before the subject transfer in Paragraph 40(a).

44. On or about April 1, 2020, less than three (3) months after receiving €400,000 in the Impugned Transaction described in Paragraph 40(c), Miller, with Joseph as sole director and Frances as secretary, passed a special resolution to dissolve the company.

45. On or about May 27, 2020, Joseph submitted a request to the Irish Companies Registration Office to voluntarily "strike off" or dissolve Miller, therein declaring that Miller did not have assets or liabilities in excess of €150 as of that date.

46. The Liquidator has been unable to locate any records that show Plaintiff owed any obligations to any Defendant or that would otherwise provide lawful justification for the Impugned Transactions.

47. Because there was no lawful basis to direct removal of the Funds to any of the Defendants, false descriptions were added regarding the purpose of the wire transfers constituting the Impugned Transactions, which varied from "BMP Galway LLC Escrow Agent Account" to "directors fees" and "Escrow".

48. Had there been any lawful or legitimate purpose for the Impugned Transactions – or even a good faith *belief* of a lawful or legitimate purpose – Joseph had a chance to address it in his affidavits to the Irish Court on February 19, 2020, and March 13, 2020, but he did not.

49. Joseph and Norah have also refused to deliver the books and records of the Plaintiff to the Liquidator, despite representing to the Northern Illinois Bankruptcy Court that they possessed them. *See* Case No. 18-31569, Dkt. 8, p. 16.

50. On or about January 26, 2022, the Liquidator applied to this Court in Case No. 22 CV 444, requesting permission to conduct discovery regarding the Impugned Transactions for use in the Proceedings, pursuant to 28 U.S.C. § 1782(a).

51. On or about March 29, 2022, based on the Impugned Transactions, the Liquidator applied to the High Court of Ireland in 2022 No. 64 CV COS for an order disqualifying Joseph and Norah from being appointed or acting as a director or other officer, statutory auditor, receiver, liquidator or examiner, or being in any way, whether directly or indirectly, concerned or taking part in the promotion, formation, or management of a company or society in Ireland for such period at the court directs.

52. On or about June 22, 2022, the Irish Court granted the Liquidator's application in 2022 No. 64 CV COS, finding the Impugned Transactions "*to be entirely improper and to constitute a fraud on the company and its creditors*". The Irish Court entered an Order disqualifying Joseph for a period of ten (10) years and Norah for a period of seven and a half (7.5) years.

53. On or about July 27, 2022, this Court granted the Liquidator's request to conduct discovery. *See* Case No. 22 CV 444, Dkt. 1, 4-1, 6 & 7. The Liquidator subpoenaed First American Bank for records of the Immersion account, which revealed the following:

   (a) Prior to receipt of the $1,204,830 (or approximately €1,100,000) wire transfer from Plaintiff on or about January 21, 2020, the Immersion account held a nominal balance of $1,773.30;

   (b) On or about January 24, 2020 – three days after the transfer directed by Joseph – Mark directed a wire transfer of $1,204,830 (or approximately €1,100,000)

to Morgan Stanley *for further credit to BMP* (the "**Subsequent Transaction**"); and

(c) On or about April 8, 2020, Frances withdrew the remaining nominal balance and closed the Immersion account at First American Bank.

## GENERAL RICO ALLEGATIONS

54. All named Defendants herein are culpable persons pursuant to 18 U.S.C. § 1961(c) because they are individuals or entities capable of holding a legal or beneficial interest in property.

55. Plaintiff, Defendants, and Kevin constitute an association-in-fact enterprise (the "Sheehan Enterprise"). Joseph, Norah, James, Frances, and Mark (the "Individual Defendants"), along with Kevin, enjoy longstanding and continuous relationships, as they are all immediate family members by blood or marriage. Immersion, BMP, Jasblack, Medistead, and Miller (the "Company Defendants"), along with Plaintiff, were all controlled by one or more of the Individual Defendants. The Individual Defendants, Company Defendants, and the Sheehan Enterprise all shared a common purpose to deprive the Plaintiff of the Funds by means of the Impugned Transactions and to conceal the ultimate destination and use of the Funds so transferred, in order to obtain control and benefit of the Funds.

56. Joseph, as director of the Plaintiff, conducted the Sheehan Enterprise in violation of 18 U.S.C. § 1962. Joseph removed the Funds from Plaintiff's Irish bank account and used the Sheehan Enterprise to disperse them through the Impugned Transactions by means of wire fraud, a racketeering activity.

57. Norah, James, Frances, and Mark, together with the Company Defendants, conspired with Joseph to violate 18 U.S.C. § 1962 by participating in and accepting the Impugned Transactions.

58. Defendants, through the Sheehan Enterprise, conducted a pattern of racketeering from at least January 20, 2020, through February 6, 2020. This pattern of activity consisted of a minimum of the six (6) wire transfers involved in the Impugned Transactions and Subsequent Transaction, all of which were acts that had the same or similar purpose, result, participants, victim, and method of commission and were not isolated events.

59. The activity and predicate acts of the Sheehan Enterprise, through the Impugned Transactions, affected foreign and interstate commerce. Wire transfers were made from Ireland to the United States and from the United States to Ireland. These international wire transfers resulted in both substantial and direct effects on the United States, as they involved bank accounts, companies, and individuals situated, residing, and/or doing business in the United States – including but not limited to Joseph, Norah, Frances, Mark, Kevin, BMP, Immersion, and Immersion's account at First American Bank.

60. Plaintiff is an eligible "person" who sustained an injury to its business or property by reason of Defendants' violation of § 1962 as further detailed below.

## COUNT I: RICO § 1962(c)

61. Plaintiff adopts and realleges Paragraphs 1 to 60 as though fully set forth herein.

62. The Sheehan Enterprise was an enterprise engaged in and whose activities affected interstate and foreign commerce.

63. Joseph, James, Norah, Frances, Mark, Immersion, BMP, Jasblack, Medistead, and Miller (the "Count I Defendants") were employed by or associated with the Sheehan Enterprise.

64. The Count I Defendants agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiff.

65. Specifically, on or about November 9, 2018, Norah attempted to discharge Plaintiff's Irish debts through Chapter 11 bankruptcy in the Illinois Northern Bankruptcy Court, Case No. 18-31569. Joseph and Norah also unsuccessfully initiated the Proceedings in Ireland, which only resulted in increasing Plaintiff's debts.

66. Rather than honoring Plaintiff's lawful debts, Joseph initiated the Impugned Transactions without any commercial or legal justification, inserting false descriptions of the purposes for the wire transfers.

67. Under and in furtherance of their fraudulent scheme, Defendants committed multiple related acts of knowingly receiving or controlling companies which received the Funds, all to conceal the true purpose of the Impugned Transactions.

68. Joseph, James, Frances, Mark, Immersion, BMP, Jasblack, Medistead, and Miller accepted the proceeds of the Impugned Transactions and/or Subsequent Transaction, without any commercial or legal justification. As demonstrated by the refunded transfer to Kevin, any of the Count I Defendants could also have returned the funds so wired to them but chose not to.

69. In fact, James accepted funds directed to Jasblack, which had only been registered days before the subject Impugned Transaction and therefore could not have any legitimate basis to receive funds from Plaintiff.

70. Under and in furtherance of their fraudulent scheme, Defendants also knowingly committed multiple related acts to conceal the ultimate use and destination of the Funds, including at a minimum the following:

   (a) Mark, through Immersion, initiated the Subsequent Transaction within three (3) days of receiving proceeds through the largest Impugned Transaction;

   (b) Frances closed Immersion's bank account less than three (3) months after the Subsequent Transaction;

(c) Joseph took action to dissolve Miller within three (3) months of receiving proceeds through an Impugned Transaction; and

(d) James registered Jasblack as a company three (3) days before receiving proceeds through one of the Impugned Transactions.

71. On information and belief, the practice of additional wires in furtherance of the enterprise was not limited to the Subsequent Transaction. When Joseph requested to dissolve Miller within four (4) months of receiving €400,000 from an Impugned Transaction, he represented that the company had assets of €150 or less, meaning that the €400,000 had to be depleted or dispersed in some manner during that time period.

72. Joseph and Norah thereafter refused to turn over any company records of Plaintiff related to the Impugned Transactions, contrary to their duties as Plaintiff's directors.

73. Thereby, the Count I Defendants acted to defraud the Plaintiff, knowing these proceeds were tainted by fraud and that they had no entitlement to them.

74. The acts set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

75. The Count I Defendants have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. § 1962(c).

76. As a direct and proximate result of the Count I Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiff has been injured in its business and property in that it has been permanently deprived of millions of dollars fraudulently removed through the Impugned Transactions.

WHEREFORE, Plaintiff MYLES KIRBY, Liquidator, o/b/o BLACKROCK MEDICAL PARTNERS LIMITED, respectfully requests that this Honorable Court enter judgment in its favor and against Defendants JOSEPH C. SHEEHAN a/k/a JOSEPH MARY

SHEEHAN, JOSEPH SHEEHAN SR., and JOSEPH CM SHEEHAN d/b/a BMP GALWAY;NORAH E. SHEEHAN; JAMES J. SHEEHAN; FRANCES P. CROWLEY; MARK J. CROWLEY; IMMERSION SOLUTIONS LAB LLC; BMP GALWAY LLC; JASBLACK GLOBAL LIMITED; MEDISTEAD IRELAND LIMITED; and MILLER BRIDGE and award Plaintiff three times actual damages and costs of suit, including reasonable attorney's fees, and any other relief the Court deems appropriate.

## COUNT II: RICO § 1962(a)

77. Plaintiff adopts and realleges Paragraphs 1 through 76 as if fully set forth herein.

78. The Sheehan Enterprise is an enterprise engaged in and whose activities affect interstate and foreign commerce.

79. Joseph, Mark, Immersion, and BMP (the "Count II Defendants") used and invested income derived from a racketeering activity pattern in an interstate enterprise. Specifically, they used proceeds from the Impugned Transaction listed in Paragraph 40(b) to invest in the Morgan Stanley account of BMP via the Subsequent Transaction.

80. The racketeering activity listed above constitutes a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

81. As a direct and proximate result of Count II Defendants' racketeering activities and violations of 18 U.S.C. § 1962(a), Plaintiff has been injured in its business property in that it has been permanently deprived of over one million dollars fraudulently removed through the Impugned Transaction described in Paragraph 40(b) and invested through the Subsequent Transaction.

WHEREFORE, Plaintiff MYLES KIRBY, Liquidator, o/b/o BLACKROCK MEDICAL PARTNERS LIMITED, respectfully requests that this Honorable Court enter judgment in its favor and against JOSEPH C. SHEEHAN a/k/a JOSEPH MARY SHEEHAN, JOSEPH SHEEHAN SR., and JOSEPH CM SHEEHAN d/b/a BMP GALWAY; MARK J.

CROWLEY; IMMERSION SOLUTIONS LAB LLC; and BMP GALWAY LLC and award Plaintiff three times actual damages and costs of suit, including reasonable attorney's fees, and any other relief the Court deems appropriate.

**COUNT III: RICO § 1962(b)**

82. Plaintiff adopts and realleges Paragraphs 1 through 76 as if fully set forth herein.

83. The Sheehan Enterprise is an enterprise engaged in and whose activities affect interstate and foreign commerce.

84. Joseph, Norah, James, Frances, and Mark (the "Count III Defendants") acquired and maintained interests in and control of the Sheehan Enterprise through a pattern of racketeering activity.

85. Specifically, Norah unsuccessfully attempted to discharge Plaintiff's and BMP's debts in Illinois Northern Bankruptcy Court. Norah and Joseph also initiated the Proceedings that ultimately increased Plaintiff's debts.

86. Thereafter, Joseph unlawfully removed the Funds from Plaintiff, who at that time was under his and Norah's control, and dispersed them through the Impugned Transactions to the Company Defendants and Kevin, without any commercial or legal justification.

87. Norah and Joseph, as directors of Plaintiff, refused to provide any documentation regarding the Impugned Transactions, thereby allowing the Company Defendants to gain control of the Funds in furtherance of the Sheehan Enterprise's purpose of defrauding Plaintiff.

88. Joseph, James, Frances, and Mark, as directors, officers, and/or shareholders, controlled the Company Defendants used to receive and/or transfer the proceeds of the Impugned Transactions and/or Subsequent Transaction.

89. In an attempt to disguise the ultimate destination of the Funds and in furtherance of the Sheehan Enterprise's unlawful purpose of intentionally defrauding Plaintiff, Defendants knowingly took the actions described in Paragraphs 70 and 71, including additional transfers of funds, registering and dissolving companies, and closing bank accounts.

90. The racketeering activity listed above constitutes a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

91. The Count III Defendants have directly and indirectly acquired and maintained interests in and control of the enterprise through the pattern of racketeering activity described above, in violation of 18 U.S.C. § 1962(b).

92. As a direct and proximate result of Count III Defendants' racketeering activities and violations of 18 U.S.C. § 1962(b), Plaintiff has been injured in its business and property in that it has been permanently deprived of millions of dollars fraudulently removed through the Impugned Transactions.

WHEREFORE, Plaintiff MYLES KIRBY, Liquidator, o/b/o BLACKROCK MEDICAL PARTNERS LIMITED, respectfully requests that this Honorable Court enter judgment in its favor and against JOSEPH C. SHEEHAN a/k/a JOSEPH MARY SHEEHAN, JOSEPH SHEEHAN SR., and JOSEPH CM SHEEHAN d/b/a BMP GALWAY; NORAH E. SHEEHAN; JAMES J. SHEEHAN; FRANCES P. CROWLEY; and MARK J. CROWLEY and award Plaintiff three times actual damages and costs of suit, including reasonable attorney's fees, and any other relief the Court deems appropriate.

## COUNT IV: RICO § 1962(d)

93. Plaintiff adopts and realleges Paragraphs 1 through 92 as if fully set forth herein.

94. As set forth above, Joseph, James, Norah, Frances, Mark, Immersion, BMP, Jasblack, Medistead, and Miller (the "Count IV Defendants") agreed and conspired to violate 18 U.S.C. § 1962(a), (b) and/or (c).

95. The Count IV Defendants have intentionally conspired and agreed to participate in the conduct of the affairs of the enterprise through a pattern racketeering activity. As explained above, if the Count IV Defendants had not conspired and agreed to remove the Funds from Plaintiff, they would have returned them via a refunding wire, as occurred with the transaction to Kevin.

96. Joseph, James, Norah, Frances, and Mark intentionally conspired and agreed to directly and indirectly acquire or maintain interests in the enterprise through a pattern of racketeering activity, as they controlled the Company Defendants involved in the Impugned Transactions and associated acts of transferring funds, creating and dissolving companies, and closing bank accounts.

97. Joseph, Mark, Immersion, and BMP have also intentionally conspired and agreed to directly and indirectly use or invest income that is derived from a pattern of racketeering activity in an interstate enterprise, by transferring Funds through Subsequent Transaction into an investment account for BMP.

98. The Count IV Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described above. That conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(a), (b), and/or (c) in violation of 18 U.S.C. § 1962(d).

99. As a direct and proximate result of the Count IV Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiff has been injured in its business and property in that it has been permanently deprived of millions of dollars fraudulently removed through the Impugned Transactions.

WHEREFORE, Plaintiff MYLES KIRBY, Liquidator, o/b/o BLACKROCK MEDICAL PARTNERS LIMITED, respectfully requests that this Honorable Court enter judgment in its favor and against JOSEPH C. SHEEHAN a/k/a JOSEPH MARY SHEEHAN,

JOSEPH SHEEHAN SR., and JOSEPH CM SHEEHAN d/b/a BMP GALWAY; NORAH E. SHEEHAN; JAMES J. SHEEHAN; FRANCES P. CROWLEY; MARK J. CROWLEY; IMMERSION SOLUTIONS LAB LLC; BMP GALWAY LLC; JASBLACK GLOBAL LIMITED; MEDISTEAD IRELAND LIMITED; and MILLER BRIDGE and award Plaintiff three times actual damages and costs of suit, including reasonable attorney's fees, and any other relief the Court deems appropriate.

    Respectfully submitted,

    MYLES KIRBY, Liquidator, o/b/o
    BLACKROCK MEDICAL PARTNERS
    LIMITED, a corporation of the Republic
    of Ireland, Plaintiff

BY: */s/ Melinda L. Mannlein*
    One of its attorneys

Melinda L. Mannlein – ARDC No. 6288382
Hasselberg, Rock, Bell & Kuppler LLP
4600 N. Brandywine Drive, Suite 200
Peoria, IL 61614
Phone: 309-688-9400
Fax:    309-688-9430
Email: mmannlein@hrbklaw.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MYLES KIRBY, Liquidator, o/b/o BLACKROCK MEDICAL PARTNERS LIMITED, a corporation of the Republic of Ireland, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>)<br>) |
| v. | ) Case No. 2023 CV 936 |
| JOSEPH C. SHEEHAN a/k/a JOSEPH MARY SHEEHAN, JOSEPH SHEEHAN SR., and JOSEPH CM SHEEHAN d/b/a BMP GALWAY; NORAH E. SHEEHAN; JAMES J. SHEEHAN; FRANCES P. CROWLEY; MARK J. CROWLEY; IMMERSION SOLUTIONS LAB LLC; BMP GALWAY LLC; JASBLACK GLOBAL LIMITED; MEDISTEAD IRELAND LIMITED; and MILLER BRIDGE LIMITED, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## **JURY DEMAND**

Plaintiff MYLES KIRBY, Liquidator, o/b/o BLACKROCK MEDICAL PARTNERS LIMITED, a corporation of the Republic of Ireland, hereby demands a trial by jury of all issues raised in the foregoing pleadings.

Respectfully submitted,

MYLES KIRBY, Liquidator, o/b/o
BLACKROCK MEDICAL PARTNERS
LIMITED, a corporation of the Republic
of Ireland, Plaintiff

BY: */s/ Melinda L. Mannlein*
One of its attorneys

Melinda L. Mannlein – ARDC No. 6288382
Hasselberg, Rock, Bell & Kuppler LLP
4600 N. Brandywine Drive, Suite 200
Peoria, IL 61614
Phone: 309-688-9400
Fax: 309-688-9430
Email: mmannlein@hrbklaw.com